Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Jordan T. Smith, Esq., Bar No. 12097
JTS@pisanellibice.com
Brianna Smith, Esq., Bar No. 11795
BGS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone:  702.214.2100

*Attorneys for Plaintiffs*
*Matthew Maddox and Katherine Maddox*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW MADDOX, an individual; and KATHERINE MADDOX, an individual.<br><br>Plaintiffs,<br>v.<br><br>SASHA ADLER, an individual; SASHA ADLER DESIGN, LLC; DOES I-X; ROE CORPORATIONS XI-XX.<br><br>Defendants. | Case No.: 2:23-cv-00535-RFB-NJK<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMAND** |

For their complaint, Plaintiffs Matthew Maddox and Katherine Maddox hereby state and

allege as follows:

### NATURE OF THE CASE

This case arises from an interior design dream that turned into an interior disaster due to

the deceptive trade practices of Defendants Sasha Adler ("Adler") and her entity, Sasha Adler

Design, LLC ("SAD") (together "Defendants"). Defendants misrepresented that they were

proficient, experienced, and qualified to perform interior design services in Nevada. They were

not. While Adler portrays herself as a world-class professional with cutting edge interior designs

and access to custom fabrications, the only thing fabricated are Adler's invoices. As a result,

homeowners Matthew and Katherine Maddox (together "Plaintiffs") have been left to clean up

Defendants' defective design work, incorrect items, broken pieces, and phantom products while

1
2
digging through Defendants' Enron-like accounting and exorbitant bills which bilked Plaintiffs for over $2.2 million dollars.

3
4
5
6
Plaintiffs repeatedly tried to resolve this dispute without litigation, but Defendants sought to sweep their deceptive trade practices under the rug. Accordingly, Plaintiffs seek compensatory and exemplary damages against Defendants in an amount in excess of $75,000.00 to be determined at trial.

7
## JURISDICTION AND VENUE

8
9
10
11
12
13
1)    Defendants have directed conduct to, and caused harm in, Clark County, Nevada. Defendants have caused the acts, omissions, and events complained of herein to occur in Las Vegas, Nevada. Thus, jurisdiction and venue are proper in the Eighth Judicial District Court (EJDC) in Clark County, Nevada. The case was originally filed in the EJDC, however, on April 10, 2023, Defendants removed the case to this Court "pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446." (ECF No. 1.)

14
15
16
2)    Further, Defendants have purposefully availed themselves of the privilege of conducting business activities in Nevada. Defendants have performed and advertised their services in Nevada. Plaintiffs' suit arises from, and relates to, Defendants' contacts with Nevada.

17
## THE PARTIES

18
19
3)    Plaintiff Matthew Maddox ("Mr. Maddox") is and was at all relevant times a resident of Clark County, Nevada.

20
21
4)    Plaintiff Katherine Maddox ("Mrs. Maddox") is and was at all relevant times a resident of Clark County, Nevada.

22
23
24
5)    Upon information and belief, Defendant Sasha Adler ("Adler") is and was at all relevant times a resident of Chicago, Illinois. Adler markets and conducts business in the State of Nevada.

25
26
6)    Upon information and belief, Defendant Sasha Adler Design, LLC ("SAD") is an Illinois limited liability company. SAD markets and conducts business in the State of Nevada.

27
28
7)    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X, inclusive, and ROE CORPORATIONS XI through

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

XX, inclusive, and each of them, are unknown to Plaintiffs at the present time, and Plaintiffs therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believes and thereon alleges that each of the Defendants designated herein as DOES I through X and ROE CORPORATIONS XI through XX, are responsible for the claims and damages alleged herein and performed those acts or omissions in coordination with, and at the direction of, Defendants in Clark County, Nevada. Plaintiffs are also informed and believe that some or all of DOES I through X and ROE CORPORATIONS XI through XX are residents of Nevada. Once discovery has disclosed the true identities of such parties, Plaintiffs will ask leave of this Court to amend their Complaint to insert the true names and capacities of said Defendants DOES I though X, inclusive, and ROE CORPORATIONS XI through XX, inclusive, and to join such Defendants in this action.

## COMMON ALLEGATIONS

**Nevada Law Requires Interior Designers to be Ethical, Knowledgeable, and Competent in Performing Services within this State**

8)       Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

9)       Interior designers who perform work within Nevada must be registered with the State and exercise knowledge, skill, and competency in performing interior design services. NAC 623.860; NRS 623.180(1) (stating "no person may practice…residential design in this state without having a certificate of registration issued to him or her pursuant to the provisions of this chapter."); *see also,* NRS 623.0225.

10)     Before beginning a project, an interior designer must fully disclose to prospective clients all compensation that the designer will receive in connection with the project. Compensation that is not fully disclosed to a client cannot be accepted by the designer. NAC 623.865.

11)     Interior designers must also comply with all local, state, and federal laws and are prohibited from making any misleading, deceptive, or false statements or claims. NAC 623.880.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

3

**Plaintiffs Retain Defendants and Receive Deficient and Deceptive Work Product**

12)    Plaintiffs contacted Defendants to perform interior design consultation services at their Las Vegas, Nevada residence in April 2020.

13)    Plaintiffs selected Defendants to perform work at their residence because the Defendants held themselves out as having the knowledge and skills necessary to perform interior design services within their "timeline, objectives, and budget." *See* https://www.sashaadler.com/about. Based upon Defendants' representations, Plaintiffs believed that Defendants had the ability to perform the desired design work in a world class manner.

14)    Defendants lead Plaintiffs to believe that Defendants were authorized to practice and provide interior design services in Nevada.

15)    In April 2020, Defendants represented to Plaintiffs that their pricing and costs would be completely transparent throughout the project. Defendants represented that they would provide Plaintiffs upfront pricing and a "line item budget for all purchases" which provide Plaintiffs proof of all mark-ups, commissions, and costs for which Plaintiffs would be responsible. As described below, Plaintiffs would unfortunately learn that these representations were false.

16)    Defendants also represented and assured Plaintiffs that they would undertake quality assurance measures to ensure the products that were delivered to Plaintiffs met the approved specifications, quality, and world class standards Defendants represented they could deliver. As more fully illustrated here, these representations were objectively false. Defendants had no process or procedure in place to ensure products received were the correct product approved by Plaintiffs, not defective, or broken. Indeed, Defendants would often make intentional, unilateral, and unauthorized changes without informing Plaintiffs.

17)    In reliance on Defendants' representations, Plaintiffs hired Defendants to perform professional interior design and decorating services for their Las Vegas residence.

18)    Defendants not only made misrepresentations to induce Plaintiffs to engage them, Defendants obfuscated, deceived, and lied throughout the course of the project about the decorative pieces purchased, and the costs and charges associated with the item.

19)     To summarize:

•     Defendants misrepresented designs, measurements, and product characteristics and quality so as to charge Plaintiffs significant sums to "correct" problems.

•     Defendants failed to disclose that they made unilateral changes to previously approved items to dramatically increase expenses above the approved price and to increase their fees.

•     Defendants misrepresented or concealed that they were knowingly delivering unapproved, damaged, incorrect, defective, and/or broken items. Defendants would then charge Plaintiffs again to "fix" problems.

•     Defendants misrepresented or concealed that they were charging for, and promising to deliver, many items that could not be manufactured or obtained. After charging Plaintiffs, many pieces had to be cancelled or returned, only for Plaintiffs to wait for months, or *years* in some instances for the new item to arrive (if it arrived).

•     Other times, Defendants falsely told Plaintiffs that long-missing items were in "production" and/or otherwise could not be cancelled so Defendants could wrongfully keep their fees.

•     Defendants fraudulently charged Plaintiffs for shipping expenses and illegally assessed taxes.

20)     Defendants intentionally, recklessly, and/or negligently caused numerous broken and/or incorrect items to be delivered to the Plaintiffs' home at Plaintiffs' expense which later had to be returned or corrected – if Defendants allowed or cooperated with returns of the products at all. Below are just *some* of the many instances of Defendants' deceptive practices and acts.

a)     Custom Mohair family room rug. Defendants represented that they could have made a custom Mohair rug for Plaintiffs' family room. On June 11, 2021, Plaintiffs approved Defendants' proposal (#112557) for the purchase of a 14' x 17' rug that was tan in color for the price of $25,445.37 as well as a rug pad for $1,183.34. When the rug and pad were delivered to Plaintiffs' home over a year later on August 4, 2022, the rug was not tan in color as represented by the Defendants, it was white. Worse, the rug is *3 feet* (not inches) in length shorter

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

than the original specification represented by Defendants and approved by Plaintiffs. In other words, the rug (and pad) are nothing like the product represented to or approved by Plaintiffs. Unwilling to replace the rug with the correct size and color and potentially lose fees or commissions, Defendants merely offered to patch the rug with "[an] additional panel" to add the missing 3 feet *to the current incorrect rug* and told Plaintiffs it would take six months to do so. Defendants refused to refund any part of the cost paid by Plaintiffs for this 3-foot sized error. Instead, Plaintiffs were saddled with a total of $35,017.63 for a rug and $1,183.34 for the rug pad that is the wrong size and the wrong color.

b)      Custom woven Alpaca bedroom entry rug. On March 9, 2022, Defendants proposed (via proposal #118918) to Plaintiffs the purchase of bedroom entryway rug. Defendants represented the specifications on the approved proposal as 4' x 7' in size. On March 9, 2022, Plaintiffs approved the rug and paid Defendants $3,609.99. Like the family room rug, upon delivery, Plaintiffs discovered that the rug was not the size represented by Defendants. The rug Defendants delivered was one (1) foot shorter in width than what Defendants represented and Plaintiffs approved (and paid for). Unbeknownst to Plaintiffs, Defendants had unilaterally changed the approved size. At no time prior to delivery did Defendants admit to Plaintiffs that they had altered the characteristics of the previously approved rug. It was only after the Plaintiffs saw the rug placed in the hallway did they realize the size was wrong. When Plaintiffs questioned Defendants about the discrepancy, Adler admitted to changing the size and that she did not disclose this change to Plaintiffs. Defendants did not offer to refund the cost paid by Plaintiffs for this rug, nor have the Defendants delivered the correct sized rug that Plaintiffs' approved.

c)      Antique office desk. On August 13, 2021, Defendants proposed (via proposal #115423) to Plaintiffs the purchase of an antique desk. Defendants showed Plaintiffs a photograph of the desk during a presentation, utilizing a presentation slide deck (of which Plaintiffs were not allowed to keep), which showed a desk that was not damaged and had no scratches. Based on Defendants' presentation, Plaintiffs approved and paid a "total" cost of $74,422.69 for the desk. The desk was delivered to Plaintiffs' home on October 1, 2021. The desk is materially different from the photographs Plaintiffs were shown during the presentation with

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1    regard to its quality and condition. Indeed, the desk has new scratches all over its entire surface.

2    At first, Defendants represented that they would fix the errors but, later, Defendants inexplicably

3    changed course and refused to refund or correct the problems. Plaintiffs were later billed more for

4    the desk for a new "total" amount of $79,401.29.

5                   d)      Fireplace screen. On March 29, 2022, Plaintiffs approved the purchase of a

6    fireplace screen (proposal #122022) that was comprised of glass with brass detail on the top and

7    bottom of the screen. Plaintiffs approved and paid a "total" cost for this item in the amount of

8    $3,822.39. Unbeknownst to Plaintiffs, the item was switched out by Defendants, without

9    Plaintiffs' knowledge or approval, for a different fireplace screen. The switched-out fireplace

10   screen did not have the same characteristics as the previously approved fireplace screen and it

11   would later be learned that the unapproved replacement came at a substantially increased and

12   unapproved cost. The switched-out fireplace screen did not have brass detail on the top of the

13   screen and it was a different size altogether. Again, only after delivery and seeing the item was

14   not the correct item that they had ordered, Plaintiffs questioned Defendants why the fireplace

15   screen was not the one Defendants had represented to them and that they had approved (and paid

16   for). Only then did Defendants confess that "[a]fter the item was approved but before it was

17   manufactured, the vendor modified the design of the screen." At no point, however, did

18   Defendants disclose to Plaintiffs that the product was actually an entirely different product from

19   what Defendants represented, and that Plaintiffs approved, before it was delivered to Plaintiffs'

20   home. Nor did Defendants tell Plaintiffs of the giant price increase over the authorized amount.

21   Stunningly, Defendants invoiced Plaintiffs for this *incorrect item* to the tune of $7,056.78 (per a

22   November 4, 2022 statement) and/or $7,720.58 (based on a November 7, 2022 statement), nearly

23   double what Plaintiffs' approved and expected to pay for the approved fireplace screen.

24                   e)      Nine Arm Sconces. On March 10, 2021, Plaintiffs approved the purchase

25   of a pair of sconces (proposal #112108) for the price of $15,461.64. Defendants recommended

26   these sconces for the dining area. However, Defendants did not discuss the size of the sconces

27   with Plaintiffs. When Plaintiffs asked for a drawing of the space where the sconces would go,

28   they realized the sconces would come out two (2) feet from the wall and would not fit in the

intended space. As a result, Plaintiffs asked Adler to cancel the sconces. Adler refused and instead proposed to Plaintiffs that they move the dining table out to the point where table and head chair would be in hallway/walkway space. Of course, this was not a feasible solution. The sconces were sent to be rewired which Defendants charged (and Plaintiffs paid) on June 6, 2022 for $253.26. Still today, the sconces are currently with Defendants' rewiring vendor now for nearly two years. Yet, as Defendants' deposit request dated March 10, 2021 shows below (second screenshot), Defendants charged Plaintiffs for freight despite having never actually delivered the sconces to Plaintiffs. Plaintiffs were later sent an invoice for the sconces which is higher than the originally approved proposal and assesses an incorrect (higher) amount for tax. Plaintiffs' money has neither been refunded, nor have the sconces been delivered to them.

Below is a screenshot of Defendants' "Deposit Request" sent to and paid by Plaintiffs on March 10, 2021:

| Great Room | | 112108 | Pair of Nine Arm Sconces in the Style of Jean Royere | 15,461.64 | 15,461.64 |
|---|---|---|---|---|---|

Compare with Defendants' "Project Summary" dated January 20, 2023 (reflecting a lower base price of the item, freight, and incorrect tax amount):

| | | Proposal # | Price | Freight/Other | Sales Tax | Total | Payments |
|---|---|---|---|---|---|---|---|
| | Pair of Nine Arm Sconces in the Style of Jean Royere | 112108 | 14,266.80 | 1,649.87 | 1,233.02 | 17,149.69 | 17,149.69 |

       f)      <u>Drapery</u>. On April 16, 2022, Plaintiffs authorized Defendants to purchase inoperable custom drapes for a room in their home. Mrs. Maddox specifically told SAD employee Hector Albizures that Plaintiffs wanted the drapes to be inoperable with a 12" fold over of fabric. Per Mrs. Maddox's request, Mr. Albizures represented that Defendants would ensure that her request was satisfied. When Plaintiffs were provided the proposal for the custom drapes, they questioned the price of the drapes because it seemed unusually expensive. Adler responded that

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

the drapes were more expensive because of the *type* of fabric. Plaintiffs paid the invoice in the amount of $31,583.95 (via proposal #12209) along with other associated costs for the installation. When the drapes were delivered to Plaintiffs' home, it became apparent that the Defendants had not delivered the correct product that Defendants represented they could create or that Plaintiffs' had approved and expected. Adler admitted that she unilaterally overruled Mrs. Maddox's request. Adler declared that she did not install drapes that Plaintiffs' requested or approved because, in Adler's opinion, inoperable drapes "would not look full enough." This change was not discussed with or approved by Plaintiffs. Instead, the drapes contained twice the amount of fabric (so that they would be operable instead of inoperable) and they did not have the 12" fold over. Defendants' misrepresentations and unapproved changes resulted in thousands of dollars in additional cost to Plaintiffs for drapes that did not contain the characteristics represented by the Defendants or approved by Plaintiffs.

   g) <u>Tension floor lamp</u>. On April 21, 2021, Plaintiffs approved and paid Defendants for the purchase of a custom hanging floor lamp (proposal #112486) for the price of $21,100.71. Defendants represented that it would fit in its intended space and location. Two months later, in July 2021, Plaintiffs contacted the Defendants to cancel the lamp because it did not, in fact, physically fit the space as Defendants had represented. Defendants told Plaintiffs that they could not return the lamp for a refund because the lamp was already "in production" to be custom made for them. One year later, Defendants admitted to Plaintiffs that the lamp was not in production. Thus, Defendants' representation that the lamp was "in production" being custom made for Plaintiffs was false. Defendants made this false representation so they could wrongfully keep their fees and commissions for this incorrect item. Despite claiming the product could not be returned, Plaintiffs have waited for this lamp to be delivered to their home *for almost four years*.[1] Plaintiffs have not been given a refund and Defendants have never delivered the lamp. But Defendants have (and continue to retain) Plaintiffs' $21,100.71. In addition, Plaintiffs later

---

[1] This was not the only time Plaintiffs were told they could not cancel an item because it was already "in production" despite waiting over a year or, in some cases more, for an item to be delivered. Plaintiffs attempted to cancel a pool table after two years of waiting, but was told they could not because it was "in production." To date, it has not been delivered.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1    learned from a vender (which sells the same lamp) that the actual cost of the lamp is $15,760, not

2    the $21,100.71 Plaintiffs were overcharged. Thus, Defendants charged their mark-up on retail

3    price and not the trade special pricing they represented they could get.

4                  h)    <u>Modular outdoor sofa</u>. On June 16, 2021, Plaintiffs provided Defendants a

5    photograph of an outdoor couch that they liked (see first photograph below). Defendants

6    represented that they could have a sofa custom made just like the one in Plaintiffs' photograph.

7    Based on Defendants' representations that they could custom make their desired couch, on June

8    16, 2021, Plaintiffs approved the purchase of an outdoor sofa (proposal #114541) for the price of

9    $46,891.15. In addition, because it was custom made, Plaintiffs purchased fabric from Defendants

10   for $5,901.46 (proposal #114541). After waiting nearly a year, on March 4, 2022, the sofa was

11   delivered to Plaintiffs. Plaintiffs immediately noticed that the sofa did not meet the represented

12   and approved qualities and characteristics that they requested and that Defendants represented

13   they could make (see second photo of what was delivered to Plaintiffs). The sofa's filling is stiff

14   and does not have the represented softness like the one shown in the photograph Plaintiffs'

15   provided to Defendants and that Defendants represented they could make. Instead, the sofa is stiff

16   with no cushion at all. When Mr. Maddox discussed this discrepancy with Adler he told her this

17   sofa was "nothing like what was presented" in the photograph they provided. Adler admitted that

18   she unilaterally changed the filling in the sofa "to be waterproof" notwithstanding her earlier

19   representations that she could have this couch made like the one in Plaintiffs' photograph. Adler

20   did not disclose this change to Plaintiffs prior to delivery and it was not approved. Defendants did

21   not offer to refund the cost paid by Plaintiffs, nor have the Defendants delivered the product

22   Defendants represented that Plaintiffs would receive. Subsequently, Defendants contacted

23   Plaintiffs' vendor (Living Divani) of this couch to determine whether the couch could be made

24   like the photograph they showed Adler. The vendor confirmed that they could have done so.

25   Below is the photograph Plaintiffs provided to Adler for inspiration for the custom couch she

26   promised she could make:



27

28

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

The photograph below is the "sofa" that Defendants' delivered to Plaintiffs which is currently housed in storage and accruing storage fees:



i)   <u>Bathroom vanity</u>. On August 13, 2021, Plaintiffs approved the purchase of a bathroom vanity (proposal #115029). Defendants' represented that the vanity was royal blue in color and would be made at 32 inches in height for the price of $11,682.55. Plaintiffs specifically requested that the vanity be "1 inch" above "standard" height. Defendants' employee, Hector Albizures, confirmed this special specification request in writing and Defendants represented that they would comply with it. As a result, the vanity was to be ordered custom at 32" in height. Defendants delivered the vanity to Plaintiffs on or about August 12, 2022. Immediately, Plaintiffs recognized that the vanity was the wrong height because it was much shorter than it was supposed to be and the wrong color. Given that it is a bathroom vanity, the height discrepancy is significant. When Plaintiffs asked about the color being wrong too, Mr. Albizures responded that the proposal's photo from Defendants (and upon which Plaintiffs relied and approved) used as a representative model by the Defendants that was actually a vanity "at our former client's home, so the color won't be an exact match" and that "[t]he original vanity in person is much lighter than what is represented in the photo." In other words, the representations and information provided in the approved proposal were false and misleading. Ultimately, Defendants would not offer a return of Plaintiffs' money or fix the color stating "blue is blue."

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1 Below are screenshots of photographs of what Defendants' represented in the proposal (left)

2 versus what Plaintiffs received (right):

 

9         j)     <u>Rounded corner sofa with pleated skirt.</u> On March 10, 2021, Plaintiffs

10 approved the purchase of a rounded corner sofa with pleated skirt and fabric upholstery (proposal

11 #111748) for the price of $23,767.02. Plaintiffs also purchased the fabric Defendants'

12 recommended which cost $3,318.23 (proposal #112843). Defendants represented to Plaintiffs that

13 the pleated skirt on the bottom of the couch would be uniform and touch the floor. When

14 Defendants delivered the sofa to Plaintiffs' home on June 15, 2022, it did not come as represented

15 and had the wrong characteristics and specifications. Specifically, the upholstery was incorrect

16 and it was poorly fabricated. As one clear example, the fabric on the couch was uneven in several

17 spots and the skirt raised off the floor by three (3) inches instead of touching the floor. The total

18 price paid by Plaintiffs was $31,024.53 which does not match the invoice from the vendor and the

19 charge for tax is incorrect (overstated).

20       Below is a screenshot of the "Project Summary" provided to Plaintiffs from Defendants

21 dated October 26, 2021 reflecting tax in the amount of $1,990.49:[2]

| | | Proposal # | Invoice # | Price | Freight/Other | Sales Tax | Total | Payments |
|---|---|---|---|---|---|---|---|---|
| | Rounded Corner Sofa with Pleated Skirt<br>In Production Cannot be Canceled | 111748 | | 23,767.02 | 0.00 | 1,990.49 | 25,757.51 | 25,757.22 |

---

[2]      Nevada sales tax in year 2021 was 8.375%. The correct computation of sales tax for this item is $1,990.49.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

However, in Plaintiffs' "Project Summary" dated January 23, 2023 (below) the "sales tax" was later inflated (without explanation) to $2,397.51:

| | Rounded Corner Sofa with Pleated Skirt | 111748 | 23,767.02 | 4,860.00 | 2,397.51 | 31,024.53 | 31,024.53 |
|---|---|---|---|---|---|---|---|

k) <u>Neoclassical French Bleached Oak Armoire.</u> On June 11, 2011, Plaintiffs approved and paid the purchase of an armoire (proposal #112088) for the price of $11,710.41 which was received on May 18, 2021. Defendants suggested that they would alter the top of the Armoire to fit in the area near the fireplace (the walls for which had to be extended). Mr. Maddox told SAD employee Hector Albizures that they "don't want to start altering furniture and the original design to make it fit a space." Mr. Maddox told him he did not want the top of the armoire taken off. Despite that, the top was taken off the armoire by Defendants. Plaintiffs did not learn of this until they found the top of the armoire in a storage facility of Defendants' vendor, Red Carpet. The total cost to Plaintiffs for the damaged "neoclassical" armoire is $12,266.79.

l) <u>Ottomans.</u> On June 16, 2021, Plaintiffs approved the purchase of two (2) ottomans that Defendants represented were turquoise in color for $1,528. When the ottomans were delivered to Plaintiffs' home, they were brown in color and not turquoise as represented. When Plaintiffs asked Adler about this, she responded that the "painted option" "as [depicted on] the image on the deposit" (i.e., Defendants' own proposal) was "not available" because it was "discontinued" by the vendor. Defendants never disclosed this fact to Plaintiffs beforehand. Despite this, Defendants still sent Plaintiffs the wrong item even though Plaintiffs' had never approved this change. Like many of the other wrong items Defendants intentionally delivered, Defendants would not issue a refund (or credit) even though the ottomans were not approved by Plaintiffs and did not met the represented or approved specifications and characteristics. Instead, Adler offered to "attempt to resell them" so she could keep her unearned fees and commissions. Defendants' proposal dated June 16, 2021:

| | 113997 | Two (2) Small Outdoor Rattan Ottomans | 1,427.50 | 1,427.50 |
|---|---|---|---|---|

Defendants' Project Summary (identifying turquoise ottomans) dated October 26, 2021:



| | Two (2) Small Outdoor Rattan Ottomans | 113997 | 304335 | 1,300.00 | 228.00 | 0.00 | 1,528.00 | 1,528.00 |
|---|---|---|---|---|---|---|---|---|
| | At Red Carpet Cannot be Returned | | | | | | | |

Compare with Defendants' Project Summary dated January 20, 2023 (which changed the turquoise ottomans to tan ottomans without Plaintiffs' knowledge or approval):



| | Two (2) Small Outdoor Rattan Ottomans | 113997 | 1,300.00 | 228.00 | 0.00 | 1,528.00 | 1,528.00 |
|---|---|---|---|---|---|---|---|

m)      <u>Bespoke travertine table</u>. On June 16, 2021, Plaintiffs approved and paid for the purchase of a travertine table (proposal #112344) for the price of $7,231.92. When the table was delivered to Plaintiffs' home, it was not the height represented by the Defendants when Plaintiffs approved and ordered it. Defendants attempted to mitigate their misrepresentation by ordering a new base for the table in November, 2022. However, when the new base arrived on March 9, 2023, the base did not fit the tabletop. The table is unusable as a result of Defendants' misrepresentations and incompetence. Despite Defendants' representation that a "[c]orrect table base will be sent and exchanged," Defendants have neither refunded Plaintiffs' money, nor corrected the problem. When Defendants invoiced Plaintiffs for the table on August 16, 2021, the cost of the table was inflated beyond the represented amount. Without any notice or detail explaining the increase to Plaintiffs, Defendants' invoiced Plaintiffs an "Amount" charge of $8,301, about $1,000 more than the amount which had previously been approved (and paid) by Plaintiffs.

n)      <u>Flower sculpture</u>. On March 10, 2021, Plaintiffs purchased from Defendants a flower sculpture (proposal #112250) for $15,091.22. The sculpture was delivered to Plaintiffs but did not have the floral and butterfly characteristics or specifications that Defendants represented. As a result, Plaintiffs returned the item to Defendants. Plaintiffs (not Defendants) paid for the return shipping cost for $1,068.51. Defendants did not, however, refund the money paid for the item. Instead, Defendants issued a "credit" supposedly to Plaintiffs' account with

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1   SAD for $13,899.09. This is not the correct amount for any refund or credit. Defendants'

2   statement shows a mystery charge of $1,074.09 which is subtracted from the amounted owed

3   back to Plaintiffs (which was $15,091.22) for "sales tax." Of course, sales tax does not get paid

4   twice for the same item and certainly not on a returned item. Defendants never refunded the

5   entirety of Plaintiffs' money for this item in the amount of $1,074.09.

6           o)    <u>French end chairs</u>. Plaintiffs purchased a pair of French end chairs in the

7   style of Louis XVI from Defendants (proposal #112131) for $5,707.99. The chairs were intended

8   to sit at each head of a table. The chairs do not match the height specifications represented by

9   Defendants. Both chairs are several inches shorter than Defendants represented to Plaintiffs and

10  do not sit at the table at the correct height. Plaintiffs also separately paid $1,400.77 and $119.84

11  for fabric and $3,298.89 for new upholstery (proposal #115598) for both chairs. However, the

12  upholstery on the seats of the chairs again does not meet the approved and represented

13  characteristics. The upholstery is of poor quality and sags. The chairs are unusable. While Adler

14  admitted to Plaintiffs the chairs are the wrong height, Defendants have neither refunded Plaintiffs'

15  money, nor offered to correct the problems. As for the upholstery, Defendants merely offered to

16  charge Plaintiffs *again* to have them re-upholstered so Defendants could double their fees and

17  commissions. On October 15, 2021, Defendants invoiced Plaintiffs for the chairs – a higher

18  amount than previously represented and approved by Plaintiffs in the amount of $7,583.97. The

19  total damages Plaintiffs have incurred for both chairs and the upholstery is $10,882.86.

20          p)    <u>Kitchen table chairs.</u> Plaintiffs purchased five (5) kitchen table chairs from

21  Plaintiffs (proposal #112975) for $20,651.29. Like the French end chairs above, these six chairs

22  are not the height Defendants' represented they would be and do not fit the table. While the head

23  of table chairs were too low, these chairs are over three (3) inches too high. Adler admitted the

24  chairs do not comport with her prior representations which were "supposed to be 17.72" inches

25  instead of 21 inches. She stated she would have the chairs remade at the height represented and

26  approved by Plaintiffs to correctly fit the kitchen table. On August 12, 2022, Defendants invoiced

27  Plaintiffs for the chairs at a higher amount than previously represented and approved in the

28  amount of $22,362.18. Plaintiffs also paid for these chairs to be reupholstered (proposal #115597)

at the cost of $846.72. To date, Defendants have neither corrected the chairs, nor refunded Plaintiffs' money.

21)    In addition to the innumerable items that Defendants left Plaintiffs to deal with, which was bad enough, Defendants represented to Plaintiffs that they were competent to perform construction designs for Plaintiffs' fireplace and kitchen. Defendants lied and messed that up too.

a)    <u>Kitchen</u>. Defendants represented they had the competency and skills to design a new kitchen for Plaintiffs. From April through July 2022, a general contractor, David Hansen, worked directly with Defendants' employee, Hector Albizures, to implement and carry out Defendants' kitchen design. However, the measurements Mr. Albizures provided to Mr. Hansen were incorrect for the countertops and butcher block. Mr. Hansen confirmed with Mr. Albizures that the butcher block thickness. Mr. Albizures confirmed the thickness for 2 inches, but it turned out he was wrong because the design called for 2.5 inches. Ultimately, the kitchen did not follow the design concept Defendants' represented to Plaintiffs and that Plaintiffs were expecting and paid handsomely for. To rectify this debacle – and the misrepresentations and errors of her employees – Adler agreed with Mr. Maddox that she would create new kitchen design plans to fix the previous kitchen flaws at no cost to Plaintiffs. But, without informing Plaintiffs, she had apparently changed her mind to do the work "complimentary" "as a courtesy," and charged for additional design fees for the kitchen re-design. Plaintiffs never agreed to be charged twice contrary to Adler's representations to fix the many problems for free. Still, Plaintiffs received an unauthorized invoice for these amounts.

b)    <u>Fireplace and Mantel</u>. Defendants also created a design for a fireplace in Plaintiffs' home. The fireplace wall is 66 inches wide. However, Defendants' design turned out to be faulty because it was a concept impossible to implement as drawn. When the brick was installed per Defendants' drawing specifications, it had to be taken out because the measurements were wrong. To further complicate matters, Defendants presented a proposed mantel for the fireplace, which Plaintiffs' purchased. But the mantel did not fit as represented because it was 2 inches wider than the actual wall itself. Plaintiffs incurred even more expense to re-construct the

PISANELLI BICE<br>400 SOUTH 7TH STREET, SUITE 300<br>LAS VEGAS, NEVADA 89101

fireplace so that it could be vented properly. Plaintiffs incurred $15,520.81 in damages for the mantel, and additional damages to fix the Defendants' faulty design work.

22)    Defendants also inflated unknown amounts on shipping charges. As one example, Defendants told Plaintiffs that the fireplace screen doubled in price because of shipping charges due to the "delicate glass" and "special crating" of the item. This was untrue. When Plaintiffs informed Defendants that a local store had a similar screen and could deliver it for a mere $50, Defendants' invoice was later retroactively altered to change the shipping charge to $1,750. Subsequently, Defendants' changed the price of the item from $3,822.39 (the amount Defendants' proposed and Plaintiffs' paid), to $4,761.45. Then, Defendants charged Plaintiffs for "sales tax" on the freight, which is not taxed in the state of Nevada.

To illustrate, Defendants' "Deposit Request" dated April 18, 2022 shows the following:

**SASHA ADLER DESIGN**
**Maddox Deposit Request**
**04/18/2022**

| Room | | Proposal # | Item | Total | Balance Due |
|------|---|-----------|------|-------|-------------|
| Family Room | | 122022 | Glass and Brass Fireplace Screen | 3,822.39 | 3,822.39 |

The screenshot below is Defendants' "Project Summary" dated January 20, 2023, which shows sales tax on both the item and freight:

| | | Proposal # | Price | Freight/Other | Sales Tax | Total | Payments |
|---|---|-----------|-------|---------------|-----------|-------|----------|
| | Glass and Brass Fireplace Screen | 122022 | 4,761.45 | 0.00 | 398.77 | 5,160.22 | 5,160.22 |
| | Freight for Glass and Brass Fireplace Screen | | 1,750.00 | 0.00 | 146.56 | 1,896.56 | 1,896.56 |

17

However, Defendants' vendor's documentation establishes that no sales tax is (or was) assessed on freight:

| Subtotal | $1,750.00 |
|---|---|
| Sales Tax (8.875%) | $0.00 |
| Total | $1,750.00 |

23)    Defendants also tipped or provided gratuities to third-parties which Defendants later invoiced back to Plaintiffs. Defendants never disclosed that they would do this and expect the Plaintiffs to pay for it. These changes were unapproved.

24)    As identified by the many examples above, rather than provide monetary refunds for the numerous unapproved, damaged, incorrect, defective, broken, and/or missing items, Defendants would offer alleged "credits" so Adler could wrongfully keep unearned fees and commissions. Although Defendants' bills and invoices are difficult to decipher without a forensic accountant, Plaintiffs supposedly received "credits" for the following items which were either not delivered at all or delivered to Plaintiffs in a different condition than represented by Defendants or approved by Plaintiffs:

(a)    Three (3) Ceramic Floor Lamps ($28,677.49);

(b)    Custom Hand Knotted Wool Rug ($19,157.99);

(c)    Custom Anatolian Design Wool Rug ($25,018.37);

(d)    Custom Corner Curved Banquette with Metal Base ($29,261.25);

(e)    Twenty (20) Yards of Green Fabric for Custom Curved Banquette ($3,365.04);

(f)    Maison Jansen Style Solid Brass Rope Table ($5,270.32);

(g)    Porcelain Hollyhock Sculpture by Vladimir Kanevsky ($15,091.22);

(h)    Burnished Brass Apron Front Sink ($7,344.57);

(i)    Burnished Brass Prep Sink ($3,533.30);

(j)    End Grain White Oak Butch Block with Eased Edges ($17,148.98);

(k)    Gooseneck Kitchen Sink Set with Spray ($3,913.20);

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

(l)     Deck Mounted Faucet and Handles for Island Sink ($4,485.10);

(m)    Side Spray for Island Sink ($370.64);

(n)     Water Tap for Prep Sink ($2,381.14);

(o)     Five Bronze Appliance Pulls ($1,970.75);

(p)     Two (2) Custom Brass Etageres with Integrated Lighting ($25,474.93);

(q)     Two (2) Three Hole Gooseneck Kitchen Faucets ($7,549.40);

(r)     Cold Water Dispenser ($1,056.92);

(s)     Office Chair ($5,999.21);

(t)     14' x 12'-6" Hand Woven Argentinian Llama Rug ($19,489.57);

(u)     Custom Vellum Nightstands ($26,440.47);

(v)     Marble Accent Table ($675.93);

(w)    Murano Glass Chandelier ($6,073.52);

(x)     Pair of Flower Pattern White Ceramic Sconces ($2,438.42);

(y)     Wall Mounted Faucet ($1,664.18);

(z)     Two (2) Crochet Swings for Pool ($5,664.22);

(aa)    Two-Arm Sconces ($3,731.46);

(bb)    Reupholstery of Four Matego Chair Seat Cushions ($810.00);

(cc)    Four (4) Mathiew Mategou Iron Chairs and one (1) side table ($4,653.62);

(dd)    15' x 13' Flat-Weave Area Rug with Two Fringe Stripes ($8,416.27);

(ee)    12 Panels of Crackled Off Wall Coverings ($16,319.00).

25)     Defendants "Project Summary" dated January 9, 2023 shows Defendants illegally retained more than $239,000 in "credits" for numerous refunds related to defective or broken items that Defendants were required under the law to promptly return to Plaintiffs but retained them on their own company account instead. *See* NRS 598.092(4), (9).

26)     Defendants deceptively conflated and "applied" the "credits" to avoid providing any actual discount for all of these errors and misrepresentations that might lower the commissions and fees charged by Defendants. In other words, Defendants employed a "shell game" with the credits to avoid returning any monetary value to Plaintiffs.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1       27)     Defendants continue to retain Plaintiffs' money for items long returned and

2  "credited." Defendants admit that they currently retain at least "$58,917.28 for the funds

3  previously identified by SA[D] as held on the Maddoxes' account" which is "not including

4  $10,000 dollars" Plaintiffs deposited for a retainer. Despite this money undisputedly belonging to

5  the Plaintiffs as Defendants' correspondence establishes, Defendants have not returned the money

6  and will continue to hold it hostage unless they receive a "full release [of liability]."

7       28)     Unfortunately, that is not all. Defendants deceptively charged a 35% mark-up on

8  goods *and* services (including services Defendants did not provide) but never produced a "line

9  item budget" like Defendants represented they would send to Plaintiffs containing the information

10  about the actual cost of the goods and services so Plaintiffs could confirm the mark-up and fees

11  assessed were accurate. Instead, Defendants concealed the actual total cost of goods and services

12  by first issuing a proposal and deposit request, and then later issuing yet another invoice adding

13  on more mystery charges for freight, tax, or additional unapproved and unspecified costs.

14       29)     Defendants also misleadingly represented that they could obtain goods or services

15  at reduced or special pricing based on their relationships with vendors and expertise. These

16  representations were false. Plaintiffs later learned that Defendants were obtaining goods and

17  services at retail (or greater) pricing and still charging an unwarranted commission or fee on top.

18       30)     For example, Plaintiffs originally represented the fireplace screen "total" cost was

19  $3,822.39. Defendants' final project summary, however, shows an increased cost of the item was

20  $4,765.45, in addition to freight and tax (and tax on freight). (*See* paragraph 22 above.) Assuming

21  $4,765.45 was the actual cost charged to Plaintiffs for the item, this was not a special rate as this

22  cost is more than the amount offered to the general public on the vendor's website. *See e.g.*,

23  https://www.highstyledeco.com/fire-accessories/custom-modern-fire-screen-in-polished-brass-

24  and-tempered-glass (website identified by Defendants as the vendor for the switched out fireplace

25  showing price $4,475.)

26       31)     Another example, as discussed above, is the tension floor lamp which a vendor

27  disclosed a total cost of $15,760, well below the $21,100.71 Defendants charged Plaintiffs.

28

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

32)     In addition to charging for goods that were never delivered or were defective, Defendants also fraudulently charged exorbitant hourly fees for more than $459,000 for purported design time, including billing for the same items that were delivered broken or wrong and had to be returned. Defendants then separately billed time to Plaintiffs to "fix" the problems.

33)     On October 27, 2023, Mr. Maddox asked Adler to identify the design time that was dedicated to design, sourcing, and fixing the numerous misrepresentations the Defendants' caused (through no fault of Plaintiffs) throughout this tortured project. Adler responded that she could not do so because Defendants do not bill their time "by item." Instead, all of Defendants' invoices are totally devoid of any specificity about how much time was spent on what task and when.

34)     Additionally, Defendants fraudulently charged exorbitant hourly fees for services and time that they did not actually provide or spend working on Plaintiffs' interior design project (instead of fixing their own mistakes). To conceal their false billing, Defendant improperly block-billed Plaintiffs for time entries that lack any specificity about how much time was spent on what task and when. Defendants have refused to provide documentation verifying their time. It appears that Defendants have fraudulently padded their billing time and invoices. In August 2022, Defendants conducted the "install" of the various items (that weren't broken). Yet, Defendants billed Plaintiffs over $40,000 *after* the install date when the only substantive work being done was cleaning up all of Defendants' defective work.

35)     Plaintiffs detrimentally relied on each and every one of Defendants' above-described deceptive trade practices and associated misrepresentations, acts, and omissions by paying Defendants' fraudulent invoices, paying for goods and services that were not actually provided or delivered, paying for goods and services that were not authorized or did not meet the approved specifications (including defective or broken), paying to "correct" or "fix" goods and services that Defendants knew or should have known were wrong to begin with, continuing to do business with Defendants, and otherwise foregoing remedies and recourses.

36)     In total, Defendants billed and received more than $2 million dollars from Plaintiffs. This significant sum includes amounts for goods and services that were drastically different than represented or approved, were never provided, defective, missing, incorrect,

broken, up-charged, and unauthorized. It also includes substantial amounts of overbilling and fraudulent billing plus other unauthorized, improper or unlawful charges.

37) Defendants' above-described actions, individually and collectively, constitute a pattern and business model of deceptive trade practices.

38) Before filing suit, Plaintiffs requested a final accounting and reconciliation from Defendants. However, in addition to delay and stonewalling, Defendants refused to make corrections or provide the refunds to which Plaintiffs are entitled. To date, Defendants have not provided an accurate or comprehensive accounting to Plaintiffs.

## FIRST CAUSE OF ACTION

### Violations of the Nevada Deceptive Trade Practices Act / Consumer Fraud under NRS 598.0923(1)(a), (c)

39) Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

40) The goods and services supplied by Defendants to Plaintiffs were supplied in connection with a consumer transaction.

41) The goods and services supplied by the Defendants were provided in Nevada.

42) The Nevada Deceptive Trade Practices Act was codified to protect consumers, including Plaintiffs, from misleading, deceptive, and fraudulent misconduct.

43) This action brought under the Nevada Deceptive Trade Practices Act is not an action upon any contract. NRS 41.600(4).

44) Under Nevada law, NRS 598.0923(1)(a) and (c), a person engages in a deceptive trade practice when in the course of his or her business or occupation he or she knowingly conducts business without all required state, county, or city licenses, or, violates a state statute relating to the sale of goods or services.

45) Given Defendants' scope of work which involved interior design and construction of a kitchen and fireplace at the Plaintiffs' home, Defendants were required to obtain certain licensing through the State.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

46)    Prior to being hired, Defendants led Plaintiffs to believe that Defendants possessed all necessary licenses and approvals to complete the contemplated work in Nevada.

47)    Defendants did not obtain the required licensing in violation of NRS 598.0923(1)(a),(c).

48)    As a result of Defendants' failure to be properly licensed or authorized, Plaintiffs have been damaged in an amount to be proven at trial but in excess of $75,000.

49)    The deceptive conduct undertaken by Defendants, entitles Plaintiffs to recovery of punitive damages against each for the sake of example and by way of punishing the Defendants for their deceptive conduct.

50)    Plaintiffs have been required to retain the services of counsel and therefore seek recovery of costs and attorneys' fees to the extent permitted under the law, including but not limited to NRS 41.600(3).

## SECOND CAUSE OF ACTION

### Violations of the Nevada Deceptive Trade Practices Act / Consumer Fraud under NRS 598.0923(1)(b) and NRS 598.0923(1)(e)

51)    Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

52)    Under NRS 598.0923(1)(b) and (e), a person engages in a deceptive trade practice when in the course of his or her business or occupation he or she knowingly fails to disclose a material fact in connection with the sale of goods or services, or uses an unconscionable practice in a transaction.

53)    Defendants represented to Plaintiffs that they would provide a line item budget for all purchases which would show all costs, mark-ups, and charges that Plaintiffs would ultimately be responsible for.

54)    Defendants never provided a line item budget as they represented to Plaintiffs they would.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

55)     Plaintiffs relied upon Defendants' representation that they would provide a line item budget when they retained Defendants to perform work and purchase expensive goods and services on their behalf for their home interior design project.

56)     Instead, Defendants sent "deposit requests" and subsequent contradicting invoices which do not reconcile or explain the charges in any reasonable or meaningful way to a consumer.

57)     Defendants deceptively charged a 35% mark-up on goods *and* services but never provided a statement containing information about the actual cost of the goods and services so Plaintiffs could confirm the mark-up and fees assessed were accurate. Instead, Defendants concealed the actual total cost of goods and services by first issuing a proposal and deposit request, and then later issuing invoices adding on more charges for freight, tax, or additional unapproved and unspecified costs.

58)     Separately, Defendants issued "time billing" statements to Plaintiffs which billed for time purportedly spent on Plaintiffs' interior design project.

59)     In addition to charging for goods that were never delivered or were defective, Defendants also fraudulently charged exorbitant hourly fees for design time for the same items that were delivered broken or wrong and had to be returned.

60)     Defendants then separately billed time to Plaintiffs to "fix" the problems.

61)     Plaintiffs asked Defendants to identify all of the design time that was dedicated to design, sourcing, and fixing the numerous problems Defendants' caused (through no fault of Plaintiffs). But Defendants are unable to do so because they did not keep track.

62)     Defendants' time billing entries are totally devoid of any specificity about how much time was spent on what task and when.

63)     The manner in which Defendants billed Plaintiffs for goods and their services plainly constitutes the failure to disclose a material fact in connection with the sale of goods or services and constitutes an unconscionable business practice in violation of NRS 598.0923(1)(b).

64)     Defendants' failure to provide any type of budget to Plaintiffs reflecting Defendants' cost, mark-up, and other ancillary charges is also a violation of NRS 598.0923(1)(e) for failing to disclose material facts in connection with the sale of goods or services.

65)    The unilateral, unapproved, and undisclosed changes to previously approved items without Plaintiffs' consent described above also constitutes the failure to disclose a material fact in connection with the sale of goods or services and constitutes an unconscionable business practice in violation of NRS 598.0923(1)(b).

66)    The foregoing actions of Defendants were fraudulent, misleading and deceptive and Defendants are liable for Plaintiffs' damages under Nevada law.

67)    Plaintiffs have suffered significant damages, including but not limited to excessive and unauthorized or improper charges and billings, charges for damaged, defective, and/or unapproved pieces and designs, and improperly retained sums "on account" – all in violation of the Nevada Deceptive Trade Practices Act.

68)    Plaintiffs have been damaged in an amount to be proven at trial but in excess of $75,000.

69)    The deceptive conduct undertaken by Defendants, entitles Plaintiffs to recovery of punitive damages against each for the sake of example and by way of punishing the Defendants for their deceptive conduct.

70)    Plaintiffs have been required to retain the services of counsel and therefore seek recovery of costs and attorneys' fees to the extent permitted under the law, including but not limited to NRS 41.600(3).

### THIRD CAUSE OF ACTION

**Violations of the Nevada Deceptive Trade Practices Act / Consumer Fraud under NRS 598.0915(2), (5), (6), (7), (15)**

71)    Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

72)    NRS 598.0915(2), (5), (6), (7), and (15) define deceptive trade practices as knowingly making a false representation as to the characteristics, ingredients, alterations of goods or services for sale; representing a good for sale as original or new if he or she knows the item is altered; representing a good for sale that is of a particular standard, quality, grade, style or model,

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1    if he or she knows or should know that they are of another standard, quality, grade, style, or

2    model; and knowingly making a false representation in a transaction.

3        73)    Defendants represented that various goods would have certain characteristics and

4    would meet certain specifications.

5        74)    Plaintiffs would approve of the purchase of the good proposed by Defendants, only

6    to later learn the good was modified or changed by Defendants without Plaintiffs' knowledge or

7    approval.

8        75)    In other words, the product no longer had the represented characteristics of the

9    decorative good that they had approved and purchased at an agreed upon price.

10       76)    As fully described above and incorporated herein, Defendants' violations include

11   (but are not necessarily limited to): a family room rug was several feet too short and the wrong

12   color; a bathroom vanity was several inches too short and the wrong color; two French End

13   Chairs were too short and the upholstery was made of poor quality and is already sagging; five

14   kitchen table chairs were too tall; ottomans were the wrong color; an antique desk arrived with the

15   wrong finish and damaged; an expensive indoor sofa with lopsided fabric; an outdoor sofa with

16   wrong filling and softness; and numerous other items arrived broken or defective which Plaintiffs

17   were forced to return and wait for months (or more) for new items to arrive.

18       77)    The foregoing actions of Defendants were fraudulent, misleading and deceptive

19   and Defendants are liable for Plaintiffs' damages under Nevada law.

20       78)    Plaintiffs have suffered significant damages, including but not limited to excessive

21   and unauthorized or improper charges and billings, charges for damaged, defective, and/or

22   unapproved pieces and designs, and improperly retained sums "on account" – all in violation of

23   the Nevada Deceptive Trade Practices Act.

24       79)    Plaintiffs have been damaged in an amount to be proven at trial but in excess of

25   $75,000.

26       80)    The deceptive conduct undertaken by Defendants, entitles Plaintiffs to recovery of

27   punitive damages against each for the sake of example and by way of punishing the Defendants

28   for their deceptive conduct.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

81)    Plaintiffs have been required to retain the services of counsel and therefore seek recovery of costs and attorneys' fees to the extent permitted under the law, including but not limited to NRS 41.600(3).

**FOURTH CAUSE OF ACTION**

**Violations of the Nevada Deceptive Trade Practices Act / Consumer Fraud under NRS 598.0915(6), (9), (15)**

82)    Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

83)    Under NRS 598.0195(6) and (9) it is an unlawful deceptive trade practice to knowingly make a false representation as to the characteristics or advertise goods or services with the intent not to sell them as advertised.

84)    Under NRS 598.0195(15) it is an unlawful deceptive trade practice to knowingly make any other false representation in a transaction.

85)    As fully described above and incorporated herein, Defendants' violations include (but are not necessarily limited to) knowingly advertising goods to Plaintiffs with the intent not to sell them as advertised and accepting a deposit of money from Plaintiffs only to either never deliver them or later switch the goods to a higher priced item or a different good altogether. Defendants also knowingly made other false representations during transactions related to: a family room rug was several feet too short and the wrong color; a bathroom vanity was several inches too short and the wrong color; two French End Chairs were too short and the upholstery was made of poor quality and is already sagging; five kitchen table chairs were too tall; ottomans were the wrong color; an antique desk arrived with the wrong finish and damaged; an expensive indoor sofa with lopsided fabric; an outdoor sofa with wrong filling and softness; and numerous other items arrived broken or defective which Plaintiffs were forced to return and wait for months (or more) for new items to arrive.

86)    Defendants admit to many of these violations. For instance, Defendants admitted that the bathroom vanity they represented and proposed to Plaintiffs and shown in Defendants' proposal's photograph was a vanity made for another client and that the blue color shown in that

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1   proposal photograph was not the same color that the vanity Plaintiffs purchased. In other words,

2   Defendants advertised a product it knew it would not be able to reproduce as represented and the

3   representation was false in the transaction.

4       87)    Defendants made similar representations for other decorative goods too.

5   Defendants admitted that the fireplace screen Defendants represented and sold to Plaintiffs was

6   not available. Despite having this information before the item was manufactured, Defendants

7   never told Plaintiffs that the product they approved and paid for was not available. Instead,

8   Defendants hoped to pawn off a different product so they would not have to refund their

9   commission on the expensive item.

10      88)    Defendants also represented and sold Plaintiffs "turquoise" colored ottomans but

11  sent brown colored ottomans. Defendants switched out this product too without disclosing it to

12  Plaintiffs.

13      89)    Defendants advertised and sold goods to Plaintiffs knowing they were not

14  available and tried to pass off other goods hoping Plaintiffs would not notice (or object). Each of

15  these representations were false in a consumer transaction. Under Nevada law, Defendants acts

16  are deceptive trade practices under NRS 598.0915(6), (9) and (15).

17      90)    The foregoing actions of Defendants were fraudulent, misleading and deceptive

18  and Defendants are liable for Plaintiffs' damages under Nevada law.

19      91)    Plaintiffs have suffered significant damages, including but not limited to excessive

20  and unauthorized or improper charges and billings, charges for damaged, defective, and/or

21  unapproved pieces and designs, and improperly retained sums "on account" – all in violation of

22  the Nevada Deceptive Trade Practices Act.

23      92)    Plaintiffs have been damaged in an amount to be proven at trial but in excess of

24  $75,000.

25      93)    The deceptive conduct undertaken by Defendants, entitles Plaintiffs to recovery of

26  punitive damages against each for the sake of example and by way of punishing the Defendants

27  for their deceptive conduct.

28

94)    Plaintiffs have been required to retain the services of counsel and therefore seek recovery of costs and attorneys' fees to the extent permitted under the law, including but not limited to NRS 41.600(3).

## FIFTH CAUSE OF ACTION

### Violations of the Nevada Deceptive Trade Practices Act / Consumer Fraud under NRS 598.0915(13), (14)

95)    Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

96)    Under NRS 598.0915(13), it is a deceptive trade practice to make false or misleading statements of fact concerning the price of goods or services for sale, or fraudulently alter any written statement of charges or other document in connection with the sale of goods or services, NRS 598.0915(14).

97)    As fully described above and incorporated herein, Defendants' violations include (but are not necessarily limited to) inducing and enticing Plaintiffs to hire Defendants for Plaintiffs' interior design project with representations that Defendants engaged in transparent and upfront pricing throughout the project – both for goods and services. Defendants represented that they could obtain goods or services at reduced or special pricing based on their relationships with vendors and expertise. These representations were false. Plaintiffs later learned that Defendants were obtaining goods and services at wholesale (or greater) pricing from venders and still inflating the cost of the good with an unwarranted commission.

98)    Prior to any purchase of a good, Defendants sent Plaintiffs a "deposit request" which identified a "total" cost for a good and Plaintiffs would pay that deposit request. In reality, however, the deposit request "total" was not the total cost of *any* of the items Plaintiffs purchased from Defendants. The cost of the items were inflated and/or increased at a later date.

99)    Defendants would later send additional statements that showed different "Amounts" and balances which contradicted the previous price agreed upon and paid by Plaintiffs and did not provide any explanation for the increased amount.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

100)    Defendants' statements do not specify whether the increased amount was for tax, shipping, Defendants' mark-up commission, or whether the product had changed in priced.

101)    Defendants' failure and flat refusal to provide the information identifying the actual cost of goods and services, as well as all other fees and mark-ups constitute deceptive trade practices under NRS 598.0915(13), (14).

102)    Defendants refusal to provide back-up documentation to verify their commissions and fees constitutes a deceptive trade practices under NRS 598.0915(13), (14).

103)    The foregoing actions of Defendants were fraudulent, misleading and deceptive and Defendants are liable for Plaintiffs' damages under Nevada law.

104)    Plaintiffs have suffered significant damages, including but not limited to excessive and unauthorized or improper charges and billings, charges for damaged, defective, and/or unapproved pieces and designs, and improperly retained sums "on account" – all in violation of the Nevada Deceptive Trade Practices Act.

105)    Plaintiffs have been damaged in an amount to be proven at trial but in excess of $75,000.

106)    The deceptive conduct undertaken by Defendants, entitles Plaintiffs to recovery of punitive damages against each for the sake of example and by way of punishing Defendants for their deceptive conduct.

107)    Plaintiffs have been required to retain the services of counsel and therefore seek recovery of costs and attorneys' fees to the extent permitted under the law, including but not limited to NRS 41.600(3).

### SIXTH CAUSE OF ACTION

**Violations of the Nevada Deceptive Trade Practices Act / Consumer Fraud
under NRS 598.092(4) and NRS 598.0923(1)(b)**

108)    Plaintiffs repeat, reallege, and incorporate all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

109)    Under NRS 598.092(4), a person engages in a deceptive trade practice if, in the course of his or her business or occupation, he or she fails to make the delivery of goods or

services for sale within a reasonable time or to make a refund for the goods or services, if he or she allows refunds.

110)    As described herein, Defendants represented that refunds and/or credits were available. Yet Defendants never directly returned more than $239,000 in Plaintiffs' funds for any of the refunds Plaintiffs were admittedly due.

111)    Instead, Defendants unilaterally elected to issue "credits" "on account" (Defendants' account) for refunds that were held by the Defendants. Many of these credits were never applied.

112)    Defendants' practice of retaining significant sums "on account" purportedly for the benefit of Plaintiffs instead of issuing cash refunds is a deceptive trade practice under NRS 598.092(4). Defendants engaged in this deceptive trade practice so they could retain their unearned and exorbitant commissions and fees.

113)    Still today, Defendants are inexplicably withholding over $69,000 of Defendants' funds.

114)    Defendants have told Plaintiffs in writing that they will not return Plaintiffs' money "on account" unless Defendants provide a "release [of liability]." Holding Defendants' money hostage in exchange for a liability waiver is also a deceptive trade practice under NRS 594.092(8) for "misrepresenting the legal rights, obligations or remedies of a party to a transaction."

115)    In addition, there were many times during Plaintiffs' course of dealing with Defendants that Defendants refused to cancel or issue a refund for item(s) that had not been delivered to Plaintiffs for more than one year. In fact, Plaintiffs are still waiting for the delivery of a $21,000+ lamp for the last four years.

116)    The delivery of many of the goods outlined above were unreasonably and inexplicably delayed. Defendants' failure to make the delivery of goods "within a reasonable time" is a deceptive trade practice under NRS 598.092(4).

117)    Further, Defendants' failure to disclose to Plaintiffs an estimated time in which a good would deliver to Plaintiffs is also a deceptive practice in violation NRS 598.0923(1)(b) for failing to disclose material facts in connection with the sale of goods or services.

118)    The foregoing actions of Defendants were fraudulent, misleading and deceptive and Defendants are liable for Plaintiffs' damages under Nevada law.

119)    Plaintiffs have suffered significant damages, including but not limited to excessive and unauthorized or improper charges and billings, charges for damaged, defective, and/or unapproved pieces and designs, and improperly retained sums "on account" – all in violation of the Nevada Deceptive Trade Practices Act.

120)    Plaintiffs have been damaged in an amount to be proven at trial but in excess of $75,000.

121)    The deceptive conduct undertaken by Defendants, entitles Plaintiffs to recovery of punitive damages against each for the sake of example and by way of punishing the Defendants for their deceptive conduct.

122)    Plaintiffs have been required to retain the services of counsel and therefore seek recovery of costs and attorneys' fees to the extent permitted under the law, including but not limited to NRS 41.600(3).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.    Judgment against Defendants;

2.    Compensatory damages in amount to be determined at trial;

3.    Punitive damages against Defendants;

4.    Pre and post-judgment interest;

5.    Costs and attorneys' fees as permitted by law; and

6.    Any additional or further relief this Court deems just and proper.

. . .

. . .

. . .

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a jury trial as to all issues triable by a jury.

3

Dated this 25th day of January 2024.

4

PISANELLI BICE PLLC

5

6          By:    */s/ Jordan T. Smith*
                    Todd L.  Bice, Esq., Bar No. 4534
7                    Jordan T. Smith, Esq., Bar No. 12097
                    Brianna Smith, Esq., Bar No. 11795
8                    400 South 7th Street, Suite 300
                    Las Vegas, Nevada 89101

9          *Attorneys for Plaintiffs Matthew Maddox and*
           *Katherine Maddox*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 25th day of January 2024, I caused to be served a true and correct copy of the above and foregoing **FIRST AMENDED COMPLAINT** via the Court's CM/ECF service system.

*/s/ Shannon Dinkel*
An employee of Pisanelli Bice PLLC

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101